## FARM MTG. INV. CO. v. CASSELL.

No. 21893.    March 20, 1934.

Rehearing Denied May 22, 1934.

Robinson & Oden, for plaintiff in error.

Norman & Northcutt and Madden & Hubbell, for defendant in error.

PER CURIAM. The parties will be referred to as they were in the trial court. This is an action for specific performance brought by plaintiff, A. R. Cassell, against the defendants, the Farm Mortgage Investment Company, formerly the Farm Mortgage Trust Company, of Topeka, Kan., the Oklahoma Land & Loan Company, Otis R. Cureton, and Tom J. Ballew for specific performance, whereby plaintiff seeks to compel the defendant the Farm Mortgage Investment Company, formerly the Farm Mortgage Trust Company (hereinafter referred to for brevity as the mortgage company), to execute and deliver to him a good and sufficient warranty deed to the south half of the southeast quarter and the south half of the southwest quarter of section 32, township 1, range 14, in Comanche county, Okla., in accordance with the terms and conditions of a written contract attached as exhibit A to plaintiff's original petition, said contract being dated April 6, 1928, and signed by plaintiff and by the "Farm Mortgage Trust Company, of Topeka, Kan., by Oklahoma Land & Loan Co., by Otis R. Cureton," and providing for said deed for a consideration of $2,340, $1,140 of same in cash on execution of contract and the $1,200 balance to be paid in three equal installments of $400 each, on or before April 6, 1929, 1930, and 1931, respectively, evidenced by notes of date April 6, 1928, bearing 6 per cent. interest per annum from date, to be secured by mortgage on said property, and said contract also providing that plaintiff have the rents from said premises for the year 1928, plaintiff pleading that he has fully performed all the terms and conditions imposed upon him by said contract, but that the defendant mortgage company has failed and refused to execute and deliver to him the said deed to said property. In addition to his prayer for specific performance, plaintiff asks judgment against all the defendants for $1,000 as damages sustained by him by reason of his loss of rents and delay in the execution of said deed and obtaining possession of said property, and in event specific performance is not decreed he asks judgment against defendant Oklahoma Land & Loan Company, Otis R. Cureton, and Tom J. Ballew for the $1,130 cash paid on said contract, and also for $1,000 damages. Amended and second amended petitions were filed by plaintiff, but it is not necessary to set out the substance thereof as the relief prayed is in effect the same as prayed in his original petition, the main purpose of such amended petitions being to plead that in said transaction the defendant the Oklahoma Land & Loan Company acted as agent for the mortgage company, the owner of said prop-

erty, and ratified and adopted the acts of said agent in the premises and accepted and retained the benefits thereof. The defense of the mortgage company is a general denial and an allegation that it is the owner and in possession of said property and a specific denial under oath of the agency of the Oklahoma Land & Loan Company, or Otis R. Cureton, at any time or of any authority on the part of either of them to make on its behalf the contract pleaded by plaintiff or any contract on its behalf for the sale of said lands and a denial that it ever ratified and adopted any of the alleged acts of said land company, or Cureton, in connection with said contract, or otherwise in relation to said lands, or accepted or retained any of the benefits thereof, and also a denial that the purchase price of such lands had been paid as alleged by plaintiff, but alleges the facts to be in substance that upon receipt of the alleged contract plaintiff was advised of the lack of authority of said land company and said Cureton to make any such contract for and on its behalf, or for any sale of said lands, but that it would sell said lands to him upon the terms stated in said contract provided the consideration was paid to it and that upon receipt of the note and mortgage under said contract it again advised plaintiff it would not recognize said contract, but would sell said lands to him upon the terms and conditions set out in said contract and would hold the note and mortgage until plaintiff had an opportunity to make the cash payment provided for therein, and that it has at all times held said note and mortgage as the property of plaintiff and has never accepted them for the reason that the cash payment provided in said contract was never paid by plaintiff and tenders back to plaintiff said note and mortgage. Said answer is duly verified. Plaintiff replies by way of general denial. Although defendant Ballew was served with process, no pleading was filed and no appearance was made by him, and evidently, the case was abandoned as to him and no judgment was rendered against him. The defendants Oklahoma Land & Loan Company and Otis R. Cureton answered by way of general denial, except admitting the contract pleaded by plaintiff and compliance therewith by plaintiff and also alleging that in the execution of said contract they acted in good faith and on the belief that they were the authorized agents of defendant mortgage company to so act. In the course of the litigation Otis R. Cureton died and the action as to him was revived in the name of his representatives, and the case was evidently also abandoned as to the defendants Oklahoma Land & Loan Company and the Cureton representatives, as no judgment was rendered against them. The trial resulted in a judgment in favor of plaintiff, Cassell, against the defendant mortgage company, decreeing specific performance of said contract, but no money judgment of any kind was awarded.

Defendant mortgage company appealing assigns seven errors as grounds of reversal, but in its brief discusses only the fourth assignment of error, to wit:

"Said court erred in overruling the demurrer of the defendant to the evidence of the plaintiff as not being sufficient to establish a cause of action in favor of the plaintiff and against the defendant."

At the close of plaintiff's evidence, said defendant demurred thereto and its demurrer was overruled and exception saved, whereupon defendant submitted its evidence.

Under the record, the question of agency and agency authority is decisive of this case. Was the defendant Oklahoma Land & Loan Company the agent of the defendant mortgage company, with authority to enter into the contract with plaintiff for the sale of the property involved, or, if not, did the mortgage company thereafter by its acts and conduct ratify and adopt the acts of the land company in the making of said contract, and become bound thereby? Did the mortgage company accept and retain the benefits and proceeds thereof? It is conceded by all the parties that at the time of the contract the mortgage company was the owner and in possession of said property, and had the right to sell or to contract for the sale thereof.

The trial court made exhaustive findings incorporated in the journal entry of judgment, and we quote from such findings:

"That about the 1st of March, 1928, the mortgage company was the owner of several tracts of land in the state of Oklahoma, among which were the lands involved in this action in Comanche county, Okla., and about that time listed such lands for sale with the Oklahoma Land & Loan Company, hereinafter referred to as the land company, who advertised such lands for sale: the plaintiff read the advertisement and attempted to locate the farm in question and inspect it, but was unable to do so from the description in the advertisement, whereupon he wrote the land company for a better description and the land company sent his communication to the mortgage company and the mortgage company wrote

the plaintiff on March 29, 1928, giving him a better description of the farm and offered to sell it to the plaintiff for the price quoted by the land company; this letter did not advise the plaintiff whether to deal directly with the home office or with the land company; it will be noted that the mortgage company was advised when it wrote this letter that the land had been priced to the plaintiff at $2,400 and that defendant mortgage company had listed the property with the land company at $2,000; notwithstanding the knowledge of the mortgage company that the land company was negotiating the sale of this property to the plaintiff it did not advise the plaintiff of any want of authority on the part of the land company to sell the farm; after receiving this letter the plaintiff located and inspected the farm and entered into a written agreement with the land company as agent of the mortgage company for the purchase of the farm at the figure mentioned by both the land company and the mortgage company to the plaintiff, making a cash payment of $1,140 and agreeing to give notes to the defendant for the balance and to secure the notes by a mortgage on the farm; this contract was immediately forwarded to the mortgage company, who, instead of repudiating it and so notifying the plaintiff, prepared on its forms the notes and mortgage for the deferred payments and sent them not to the plaintiff but to the land company to have them executed by the plaintiff and his wife and returned to the mortgage company; in the letter transmitting the notes and mortgage from the mortgage company to the land company, there was a denial of the land company's authority to sign the contract on behalf of the mortgage company, but there is no evidence that this communication was made known to the plaintiff; the defendant mortgage company, after writing the letter to the plaintiff above mentioned giving directions to locate the farm, had no further communication with the plaintiff until some time after the contract was signed, the money paid, the notes and mortgage executed and returned and the mortgage company and the land company failed to agree on the amount of money to be retained by the land company; on May 26, 1928, the mortgage company wrote the plaintiff in part as follows: 'We are just advised by the Oklahoma Land & Loan Company, the agents who are trying to negotiate a sale of the Cook farm in Comanche county to you, that they will not accept the regular agent's commissions for negotiating this deal.' In this letter the plaintiff is advised that the land company had no authority to make the contract but this notice came after the break between the land company and the mortgage company; from the evidence in this case, I conclude that the land company was the agent of the mortgage company to sell this land and had authority to make the contract in question and that the mortgage company is bound by and should be required to execute and deliver to the plaintiff a warranty deed upon equitable conditions."

The journal entry prescribes these equitable conditions which, under the facts and circumstances of the case, are consistent and in harmony with the terms and conditions of the contract.

The defendant mortgage company insists that the only thing it did was to list the property with the land company, and that this is not sufficient to constitute the land company its agent to bind it by an executory contract of sale, and in support thereof cites the case of Levy v. Yarbrough, 41 Okla. 16, 136 P. 1120, and various other Oklahoma authorities to the same effect. We adhere strictly to the rules laid down in those authorities, and that rule is decisive of this case in favor of the defendant mortgage company under the evidence, unless the plaintiff has made a case under the provisions of section 5013, C. O. S. 1921 (sec. 9434, Okla. Stats. 1931), as follows:

"A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it so far as the facts are known or ought to be known to the person accepting"

—and section 5247, C. O. S. 1921 (sec. 9668, Okla. Stats. 1931), as follows:

"Any person or corporation, having knowingly received and accepted the benefits, or any part thereof, of any conveyance, mortgage or contract relating to real estate, shall be concluded thereby and estopped to deny the validity of such conveyance, mortgage, or contract, or the power or authority to make and execute the same, except on the ground of fraud," etc.

The defendant mortgage company further contends that there is another reason why it should prevail, and that is that there is no evidence of any written authority of the alleged agent to execute the contract in question as required by section 5030 (evidently, however, meaning section 5034) C. O. S. 1921 (sec. 9455, Okla. Stats. 1931), as follows:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or his agent; * * *

"Fifth: An agreement for the leasing for a longer period than one year, or for the sale of real property, or of an interest therein; and such agreement, if made by an agent of the party sought to be charged, is invalid, unless the authority of the agent be in writing, subscribed by the party sought to be charged."

Many authorities in support of their respective contentions are cited by counsel on both sides, the case having been ably briefed on both sides, but, as we view it, the two sections of the Oklahoma statutes, sections 5013 and 5247, C. O. S. 1921 (sections 9434 and 9668, Okla. Stats. 1931), are determinative as applied to the evidence in the record.

In 2 Corpus Juris, p. 470, the general rule is stated:

"A principal may either ratify unauthorized acts or contracts made on his behalf by a mere stranger or volunteer who has never been his agent, but who has assumed to act as such in the particular transaction, or he may ratify the act of one who is his agent for certain purposes, but who in the particular transaction acted outside the scope of his authority or after the termination of his agency, whereupon the relation of principal and agent is created in respect to matters concerning which none before existed and the act or contract becomes as effectual as to the principal as though it had been previously authorized"

—and this rule finds sanction in Fant v. Campbell, 8 Okla. 586, 58 P. 741.

It must be admitted under the evidence that there was no written authority of the alleged agency of the Oklahoma Land & Loan Company to make the contract in this case, but we do not consider that material under the facts and circumstances in evidence, in view of the provisions of the other two sections of the Oklahoma statutes, supra, and we do not deem it necessary to pass upon the question of whether the land company was in the first instance the agent of the mortgage company to make the sale contract involved, but we do hold under the evidence in the record that upon the receipt by the mortgage company from the land company of said contract, and a request from the land company to it to prepare the necessary papers thereunder to be executed by plaintiff and wife, it was the legal duty of the mortgage company to act promptly, or at least within a reasonable time under all the circumstances in repudiation thereof, and communicate such repudiation to plaintiff. Instead of doing that, it prepared upon its own forms the necessary papers provided for in said contract and forwarded them to the land company for execution by plaintiff and his wife, and they were executed by plaintiff and wife and delivered back to the land company for return to the mortgage company. Plaintiff was allowed to deal with the land company and to continue his deal-

ings with them while the mortgage company and the land company were disputing between themselves about the commissions the land company was to receive on the deal, a matter in which the plaintiff was not at all interested, he being only interested in buying the land and procuring a warranty deed thereto; plaintiff performed his part of the contract; the mortgage company knew he had paid the cash consideration provided in the contract; the land company had forwarded to the mortgage company plaintiff's executed notes and mortgages provided for in the contract, and on the forms prepared by the mortgage company, and plaintiff was insisting upon performance of the contract by the mortgage company; the mortgage company retained plaintiff's executed notes and mortgage, and not until filing of its answer in this case did it tender or offer to tender them back to him, but all the while retained them; the notes were a legal, valid and binding obligation upon Cassell; evidently, under the evidence, the mortgage company was fully satisfied with the terms and conditions of the contract and had no intention of repudiating it until it became engaged in a controversy with the land company over the commissions to be allowed it for handling the deal; the form of the contract is not attacked by the mortgage company, the authority of the land company to execute the same on its behalf being its only attack thereon. The acts and conduct of one in relation to the particular transaction must be looked at as well as what he may say, and, in this case, under all the facts and circumstances in evidence, we hold that the mortgage company is bound by both the rule of ratification and by the rule of estoppel, and cannot now be allowed to escape performance on its part of the terms and conditions of said contract. It has by its acts and conduct made itself bound by said contract, and a court of equity will make it perform.

The trial court did not err in overruling defendant mortgage company's demurrer to plaintiff's evidence, and, this being an equity case, the judgment and findings of the trial court are not against the clear weight of the evidence, but are fully sustained by the evidence, and we approve the same.

The judgment of the trial court is affirmed.

The case, however, will be remanded to the trial court, with directions to prescribe equitable conditions for the execution and delivery by the mortgage company of the warranty deed not inconsistent with the

views herein expressed, nor inconsistent with the terms and conditions of the contract involved, for the reason that the maturity dates of the notes and mortgage executed by plaintiff have expired pending this litigation, and the plaintiff has been out of possession of the lands involved.

The Supreme Court acknowledges the aid of District Judge John Norman, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of the court for examination and report. Thereafter the opinion, as modified, was adopted by the court.